May it please the court, my name is Jonathan Montag and I'm representing Mr. Yusuf and I'd like to reserve two minutes of time for rebuttal if I may. This case is about a gentleman who is seeking asylum based on two different theories. One was his political opinion in rejecting recruitment into a militia by the chief of the militia who controlled the area where he lived. And the second theory is based on his clan membership in the Geri minority clan in Somalia. In a case where somebody's rejecting military recruitment, the issue is whether he's doing it just because he's either dodging the draft or doesn't want to die in a war or because he had a political opinion. And there's two steps to that. One, did he articulate a political opinion and was his harm as a result of it? It's clear from this record that Mr. Yusuf told a chief after he was informed that everybody had to contribute some money and join the militia that he didn't want to join the militia. That he doesn't want to take up arms and kill innocent people. And the chief responded that he was being disobedient and that he should be killed. To Mr. Yusuf himself he said you'll see what happens to you and Mr. Yusuf testified that he took that as a direct threat that something would happen. And sure enough two days later his home was bazooka'd or mortared, I'm not sure what exact armament they used, but his home was blown up and so was his mother and his brother. He's really the equivalent of a conscientious objector who then had his home blown up, correct? That's correct. This court in Barraza Rivera has pointed out that you don't have to be a conscientious objector to seek asylum or to gain asylum based on not wanting to perform in the military. You can be in the military and willing to serve but once they come up with things that you're supposed to do that you don't want to and then they harm you as a result then it arises to the... Well he never got that far because of what happened, right? Well that's right. Firstly he... He never had the opportunity to perform some other role in the military. That's right. He told them he wasn't interested and the clan chief who ran the area said you're being disobedient and we're going to kill you. And Mr. Yusuf testified that he heard from others that they were coming for him and there was a subsequent meeting and at that subsequent meeting his name was mentioned as someone who was going to be killed and no one else was mentioned specifically. Now the government would argue and the immigration judge argued that this was just a simple example of somebody not wanting to be in the military. But what distinguishes it is how specific he was to the chief that he did not want to serve because he did not want to kill innocent people. And the government in its brief points out well what evidence is there that the Geri tribe was harming innocent people? I think the evidence is there that his mother and his brother were blown up and that his store was demolished and his money was stolen. So he was an innocent person, Mr. Yusuf, and so were his mother and his brother and they all faced this harm. So it's not an example of a person who was just avoiding the war and then suffered the normal consequences. Also, Mr. Yusuf was very specific about his objection and everybody knew about it, which is an important element. Now another objection in the immigration judge's argument, this was the first immigration judge in 2001, who was the only immigration judge to ever articulate any actual basis for denial. And similarly the BIA in its decisions never was very specific about why it was denying other than to concur with the 2001 decision. The immigration judge in 2001 said there was no indication that Mr. Yusuf had some sort of political conscientious objection membership. He wasn't a Quaker, he wasn't somebody who... Probably an unlikely possibility in Somalia. Well, in light of a famous president who was a Quaker who wasn't particularly pacifistic. I don't know how meaningful it would have been anyway. But in any case, none of the cases indicate that there has to be something like that. In the premier case about gang membership in the Elias Zacharias case in the Supreme Court, Justice Scalia points out that the man said just the opposite when asked about whether he had a political motive. And he said, no, I don't want to die in a war. And that was his only motive. And several other cases that we cite, all that was required by this court was some articulation that the person opposed doing bad things to people. Be it in cases like Borja, which didn't want to contribute money to the NPA in the Philippines. Or the cases in South America where the El Salvadoran government military wanted him to capture people or to kill political enemies. And the person saying, no, I'm not going to do that. And these were people in the military. That was enough to find that they were political opponents. So it seems to me that Mr. Yusuf's motives were well articulated and the effect of his articulation was that they tried to kill him and destroyed his business and killed his mother and brother. And the other thing I want to point out is that several cases also say that testimony is adequate, particularly in 2001, to prove the point. And Mr. Yusuf was found to be credible by the immigration judge. And if you read his application, which he hand-wrote himself without representation as a newly arrived alien. It's all consistent and his concerns were specifically what he articulated in court. So the court has a situation where the man is telling the truth and he's deemed credible and he articulates a fear. And then he's threatened with death and then his home is destroyed. So all those seem to me to make it a clear case that the gentleman has a political fear. He had a well-founded fear based on politics. And the second issue in the case is that he was a member of the minority Gary sub-clan of the Berode in this country. Now, the immigration judge stated, well, there was generally a civil war, everybody was getting killed, so these are the general conditions. But the board itself in matter of H points out that if you're being targeted because of your clan membership in a place of chaos, and H was about Somalia as well, then you still make out a well-founded fear based on your clan membership. And everything Mr. Yusuf said was that he was harmed because of his clan membership. First he had to leave where he was raised and then spent the next nine years in another city because his own place was taken over by a tribe that was out to get him. And then when he came back to his tribe, came back to the place where he thought he was safe, he wasn't safe there either. So I think on both grounds, he presents strong evidence that he had a well-founded fear of persecution either because of political opinion, or because of his clan membership. May it please the Court. My name is Jesse Lorenz, and I represent the United States in this matter. And I would like to point out that persecution of military service generally does not constitute persecution here. Mr. Yusuf didn't show anything other than that the sub-clan chief was motivated to harm him because he refused to serve in the militia or pay $1,000. As Mr. Yusuf testified, the sub-clan chief sought to recruit all able-bodied men and $1,000 from all businessmen. Mr. Yusuf fell into both categories. He also sought to punish all those who resisted. We don't have any other evidence that there was – well, Mr. Yusuf now alleges that he held a political opinion and that his political opinion was known by the chief. We don't have any evidence compelling the conclusion that the chief punished him because of that political opinion. I mean, really what we have here is that the chief sought to punish people who didn't listen or didn't follow his orders. Similarly – He did that in order to avoid military service. It's not to avoid military service. It's to participate in illegal activities, unlawful activities, and in what he claims anyway, the petitioner, things that cause death. And he doesn't want to be that kind of person. Does that make a difference? Well, Your Honor, here I think as the immigration judge found – or as the immigration judge found, we have record evidence that suggests that clans and sub-clans were essentially functioning as government bodies. I could say that about El Salvador. Well, I can't comment. I mean, I understand your point, but the record does support the immigration judge's position that – I mean, country conditions record evidence supports the immigration judge's decision that this was essentially a government body that was asking him to join their militia. It doesn't compel the conclusion that this was a drug gang or a drug trafficker or some sort of narcotic ring. So I think that would be the distinguishing factor here. We just don't have anything – I mean, like I said, the record does suggest that these were government bodies. So basically the argument is that we have only a forced conscription claim here and no evidence of anything else other than that. He now also alleges a fear – Elias Zacharias – a forced conscription claim is, you know, I'm going to make you join, but he's then expressing a political opinion. So I guess I'm having trouble understanding your position. How would anyone ever have a legitimate political opinion against killing in the military, assuming this is a military unit? How would you ever be able to express that then? Well, he didn't show that it was, you know, a genuinely held conscientious decision. He expressed – He's credible. That's fair. So what would he have to say? I really, really mean it? Or what? Well, also, Your Honor, we don't have any proof that the sub-clan chief was going after him because of that. It's, you know, the persecutor's motive – Well, there is some evidence of that because they had that meeting and he said he was going to go after him because of that, because he refused to – I think he said he didn't want to kill innocent people or do inhumane acts or something like that. He said he didn't want to take up arms against innocent people. But what we have here is we have record evidence, and this Court, under a substantial evidence standard, has to find evidence that compels a conclusion, and the IJ can draw inferences from the record. And we also have evidence here that the sub-clan chief was willing to go or wanted to go after anyone who disobeyed to show them that they should join his militia or pay $1,000. So the immigration judge was allowed to make that inference, and this Court would have to then find compelling evidence that compelled the contrary conclusion to that reached by the immigration judge. So how – I'm just trying to really make this as a practical – these are nice kind of generalizations, and I know you appreciate that, too, because we're kind of taking these cases and we're trying to fit this in. But a person who has a genuinely held belief, which we have to assume given his credibility determination, that he doesn't want to fight in the military – he doesn't want to kill people. He hasn't said that he wouldn't take notes or be a clerk or something like that. But if he says that, how else could he prove it? I mean, what more would you need in order to invoke the reaction to his political opinion? Well, I think we would need evidence of the alleged persecutor's motive, and here we just don't have any evidence of his motive besides that he wanted to replenish his ranks or wanted money for his war fund. Well, the motive in blowing up his home with the bazooka and killing his mother and brother because he just didn't happen to be there. Well, I think – two points. One, as the immigration judge noted, there was never really any connection between that – his denying to serve and the attack on the house. As Mr. Yusuf admitted – What about proximity? Well, as Mr. Yusuf admitted, there was a lot of civil strife at the time. Also – But the strife was among clans. It wasn't the head of the clan blowing up his people. Sure, but I think that's to the IG's point that we don't know for certain. But wouldn't that have undermined his ability to have a militia if he was just blowing up anybody? Well, I think – I think that's certainly one way to look at it, Your Honor. But again, under the substantial evidence standard, we have to – you cannot overturn the IG's decision unless there's evidence that compels it. And I just don't think there's a connection here to – there's a – there's no compelling connection to those acts and this alleged political opinion. I mean, we have a sub-clan chief who was trying to recruit members into his army and replenish his war ranks. That doesn't go to show that he – the alleged persecutor, the sub-clan chief, held any political animus against Mr. Yusuf. I have a very sort of just practical but not really related question, and you may not really even know the answer, but I'm just curious. Is our country able to deport anybody to Somalia at this point? Well, right now, Mr. Yusuf, as of the time of the administrative hearings, he had temporary protected status. My understanding is that status is good until 2018. Now, that – I don't know in his case if he's renewed that, but September 2018 is the most recent renewal date of temporary protected status. That's TPS, but – and even if – even if – even if they don't renew the TPS status – and I understand his wife actually has it right now. That's my understanding from the record as well, Your Honor. Right. So even if they don't renew that, and is our country able to – do we have relations with Somalia such that we are actually able to deport people there anyway? That I don't – I don't have the answer to, Your Honor. But as I said, as I know he has – or according to – if he renewed his temporary protected status, that would be good until – my understanding is September of 2018. I'd also quickly like to address his claim of future persecution, which is his fear of al-Shabaab. As the board and the immigration judge found, he didn't present any testimony linking that fear to him. He didn't present an individualized risk of any harm of al-Shabaab in the future. Also, just to counter quickly his due process argument, he argues that the immigration judge should have – the second immigration judge should have reconsidered the first immigration judge's decision. As we note in our brief, immigration judges aren't fact finders. Mr. Yusuf had the opportunity to testify in support of his claim. He was given that opportunity. He actually moved the court to render a decision without further testimony. So we would just argue that that due process argument, therefore, is without merit. So in sum, we would respectfully submit and ask the court to deny the petition for review if there's no further questions. Thank you. Thank you. I think we've taken up a bit of your time with questions, so why don't we just add a minute to the clock, please. Thank you, Your Honor. In one of this court's cases in Deloso, it was a question of mixed motives, whether the person was in trouble for political reasons or whether it was revenge because the respondent in that case had gotten the person who was harming her in trouble with law enforcement. And this court said that timing of events is probative of the motivation, and in this case, political opinion. In other words, things that happened in that case right before the person was harmed gave some strength to the fact that the person was harmed for political reasons rather than, as the government might suggest, as a way to get other people to stay in the militia. He raised another issue that I don't think has been addressed, but I would be interested in hearing your position, and that was that this claim about al-Shabaab was a general claim and there was no individualized connection that was made between him and the al-Shabaab concern. That's true, Your Honor. Mr. Yusuf is not asserting that he can demonstrate that he's going to be harmed by al-Shabaab. His claims for harm are based on the claims that he had in 2001. The board asked for country conditions. It's traditional to provide country conditions in these kind of cases, and he provided them also to show that in case somebody was under the misimpression that Somalia had turned into Switzerland, it had not, and it was still a very, very dangerous place. And you had asked Judge Wardlaw if they're sending people back, and they are indeed. And my understanding is that a few of the people are staying, are actually staying in Somalia because it's just too dangerous for them, and they're fleeing to other places. But there was something in the news about a plane that was going to Somalia that was stuck in Senegal and then turned back, and then the district court judge ordered everybody released while they figure out what they're going to do with these people. But they are sending back lots of them. And thank you, Your Honor. Thank you. Thank you, counsel. The case of Yusuf versus Sessions is submitted. Thank you both for your argument this morning.
judges: McKeown, Wardlaw, Quist